**FABULOUS FUR CORP., Plaintiff,**

v.

**UNITED PARCEL SERVICE,**
**Defendant.**

**No. 86 CV 2188.**

United States District Court,
E.D. New York.

July 9, 1987.

Mandel Weiss Campise, Eisenberger & Mandel, by Scott T. Johnson, New York City, for plaintiff.

Kenneth Adler & Associates, by Alan Copertino, Melville, N.Y., for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant, United Parcel Service ("UPS"), seeks partial summary judgment on its claim that its liability for lost goods is limited to a maximum of $100 per package.[1] Plaintiff, Fabulous Fur Corp. ("Fabulous Fur"), cross-moves to strike defendant's affirmative defense to the same effect.

FACTS

On or about July 9, 1984, plaintiff, a Canadian corporation, shipped nine cartons of fur garments from Canada to New York's John F. Kennedy International Airport. Plaintiff hired Expertrans, Inc. ("Expertrans"), an international freight forwarder based in Canada, to effect the shipment. Expertrans issued a waybill naming plaintiff as consignee, "C/O EMPIRE SHIPPING CO., JFK INT'L AIRPORT, JAMAICA, NEW YORK." In the waybill space captioned "Declared Value for Carriage" Expertrans typed in "NVD" (which, according to defendants, means no value declared). The waybill further indicated "insurance not covered by us." No instructions for reshipment were noted under "Special Handling Information."

A similar Expertrans waybill dated August 13, 1984, indicated a shipment of 16 cartons of fur garments to John F. Kennedy International Airport. The relevant information mirrors that of the July 9th waybill except that under "Special Handling Information" was indicated "RESHIP VIA FEDERAL EXPRESS TO FINAL DESTINATION."

Both waybills state:

THE INFORMATION CONTAINED HEREIN ABOVE IS TO ADVISE YOU THAT YOUR SHIPMENT HAS BEEN FORWARDED IN ACCORDANCE WITH INSTRUCTIONS RECEIVED.

PLEASE NOTIFY US IMMEDIATELY SHOULD THERE BE ANY ERRORS OR OMISSIONS.

The July 9, 1984, shipment included seven fur coats intended for ultimate delivery to Furs by Robert in Troy, Michigan. The August 13th shipment included two mink coats intended for delivery to Winters Fur Shop in Red Bank, New Jersey, and four fur coats intended for delivery to Holzman Northern Furs in Milwaukee, Wisconsin.

Expertrans retained the services of Empire Shipping Company ("Empire") as plaintiff's designated agent at John F. Kennedy International Airport. Aff. of Issie Gross, Secretary and Treasurer of Fabulous Fur at ¶ 5. A carrier not identified by the parties delivered the shipments from the air carrier to Empire. Upon receipt of the furs, Empire broke down and repackaged the shipments for delivery to the individual consignees. Empire then tendered the packages to UPS for this final delivery.

UPS's "Pick-up Record," which serves as its bill of lading, dated July 13, 1984, indicates that a package bound for Furs by Robert was picked up from Empire. The pick-up record included on its face a box captioned "DECLARED VALUE ** IF IN EXCESS OF $100.00" with a space for the shipper to insert a higher value. At the bottom of the pick-up record it states in part:

** Unless a greater value is declared in writing on this receipt, the shipper hereby declares and agrees that the released value of each package ... is $100, which is a reasonable value under the circumstances surrounding the transportation.

A second UPS pick-up record dated August 15, 1984, includes shipments to Holzman Northern Furs and Winters Fur Shop. Although this latter receipt fails to indicate the shipping company from which the packages were picked up, *i.e.*, Empire, the form used mirrors the July 13, 1984, pick-up

1. Defendant's motion originally contested plaintiff's standing to bring this claim. As it appears,

however, that defendant no longer disputes this

record.[2] It is undisputed that no value in excess of $100 per package was declared on either pick-up record.

The complaint alleges that the ultimate purchasers never received the shipments at issue and plaintiff seeks $20,875 in damages.

DAMAGES

Pursuant to the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 10730, a motor common carrier may establish rates for the transportation of property under which the liability of the carrier is limited to a value established by written declaration of the shipper or by written agreement between the carrier and the shipper if that value would be reasonable under the circumstances surrounding the transportation. A motor common carrier must publish and file with the Interstate Commerce Commission tariffs containing the rates for transportation it may provide. 49 U.S.C. § 10762(a)(1).[3]

Thus, pursuant to an ICC order,[4] Exh. F to Ventre Aff. in Support of Motion for Summary Judgment, UPS filed a tariff with the ICC limiting UPS's liability for loss to $100 per package unless the shipper declares a value in excess of $100. Exh. G to Ventre Aff. in Support. The tariff provides that the shipper may declare a higher value but that an additional twenty-five

($.25) cents for each $100 increment of increased value will then be charged.

■ Plaintiff contends that the UPS pick-up record and filed tariff failed to limit effectively UPS's liability for the missing goods because UPS failed to give the shipper due notice of the liability limitation or a fair opportunity to declare a higher value. Plaintiff also asserts that UPS's failure to comply strictly with the ICC order governing the tariff voids the limitation of liability contained therein.

The Second Circuit has held that "actual knowledge of the tariff on a shipper's part will defeat any attempt to avoid its terms." *Mechanical Technology Inc. v. Ryder Truck Lines*, 776 F.2d 1085, 1090 (2d Cir. 1985) (Winter, J., concurring); *see also Ruston Gas Turbines, Inc. v. Pan American World Airways*, 757 F.2d 29 (2d Cir.1985) (applying common law principles). Thus, even where a bill of lading contains neither a reduced freight rate nor a released value for the property, actual knowledge of the tariff provisions will result in the enforceability of its terms. *Mechanical Technology*, 776 F.2d at 1087–88.

In this case it is undisputed that the released value of the goods was printed on the face of the pick-up record. Moreover, UPS has submitted evidence that Empire had actual knowledge of the terms of the

---

question, we consider that aspect of the motion withdrawn.

**2.** Plaintiff disputes the genuineness of the July 13th pick-up record because the name and address of Empire Shipping Company is not designated on its face. Defendant contends that plaintiff may not dispute the genuineness of this document as it is a duplicate copy of Empire's own records furnished by plaintiff to UPS as part of plaintiff's answer to interrogatories in a previous suit. We find that, absent evidence tending to show that no standard UPS pick-up record was completed by Empire for this delivery, plaintiff has failed to raise any genuine issue of material fact regarding the genuineness of the document.

**3.** The parties agree that the ICC has jurisdiction over this matter pursuant to the Carmack Amendment. The Court similarly finds that the transportation of the goods in question is not exempted from the ICC's jurisdiction under 49 U.S.C. § 10526(a)(8)(B). Section 10526(a)(8)(B)

excludes ICC jurisdiction over transportation of property that is part of a continuous movement which, prior to such part of the continuous movement, has been transported by an air carrier, or to a limited extent, by a foreign air carrier. In this case it appears that an unnamed carrier delivered the goods from the air carrier to Empire. Empire then temporarily stored and re-packaged the goods. Thus, the shipments were not continuous enough to fall within this exemption.

**4.** Plaintiff contests the applicability of the ICC order to its shipments as the order states that it does not apply to the establishment of released rates on traffic originating in an adjacent foreign country and moving on a through bill of lading to a point in the United States. We find this contention to be without merit. The shipment from Empire to UPS, and then to the ultimate consignees, did not move on a through bill of lading. Rather, a separate bill of lading was issued by UPS for the shipments from New York to other states in this country.

tariff and of the opportunity to declare a higher value and pay a correspondingly higher shipping rate. The affidavit of John Ventre, Delivery Information Manager for Western Long Island District of UPS, states in pertinent part:

> With regard to the Plaintiff's assertion of the lack of choice of rates, Empire Shipping Company has been a UNITED PARCEL SHIPPER, for in excess of five (5) years, assigned Shipper No. 146427, was fully familiar with the UNITED PARCEL SERVICE Tariff and the concept of declared value and was charged, as all shippers, $.25 for each increment of $100.00 of value over and above the first increment of $100.00 of declared value. In this regard, Empire Shipping Company, as all United Parcel Shippers, has an United Parcel Service Pick-up Record Book wherein *it* completes a shipping record listing all packages shipped on each day. The Pick-up Record Book also contains instructions on the procedure of how to "Declare a Value".... Empire Shipping was given a "Service Explanation" which also clearly explains the system of declared value.... In addition, Empire Shipping was given a rate chart which clearly sets forth the additional charge for declaring a value.... Based upon a review of the Pick-up Records prepared by Empire Shipping Company for the in issue shipments, it is apparent that they did not declare a value for the packages and took the benefit of a reduced shipping rate by its refusal to declare a value in the clearly set out column captioned "DECLARED VALUE**IF IN EXCESS OF $100.00."

Plaintiff's reply papers do not dispute that Empire had actual knowledge of the tariff provisions or an opportunity to declare a higher value on the pick-up receipt. Nor does plaintiff dispute that actual knowledge by its agent may be imputed to it as principal. Instead, plaintiff responds by way of an attorney's affidavit that states "it now appears that Empire Shipping was more agent for defendant than for plaintiff" and that "[g]iven the extreme involvement of Empire in defendant's scheme of shipment, one must question which party

was the principal of Empire." Reply Affirmation of Scott T. Johnson, Esq., attorney for plaintiff.

◼ Plaintiff's conclusory assertion that "one must question" whether Empire was in fact plaintiff's agent is insufficient to raise a genuine issue of material fact. To raise such a genuine dispute plaintiff has the burden of going beyond the pleadings and "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate such 'specific facts.'" . . . *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)). Here, plaintiff offers no evidence that Empire was "more agent for defendant than plaintiff." Nor has plaintiff sought additional time for discovery, as provided by Federal Rule of Civil Procedure 56(f), for example, so that it might depose Empire Shipping Company.

It may well be that Empire uses a variety of carriers and that its possession of the UPS Pick-up Record Book with a corresponding UPS number merely serves to streamline the efficiency of the relationship between these two independent corporations. We do not believe that from these facts alone one may infer the existence of an agency relationship, particularly where plaintiff originally characterized the shipper as its own agent and has made no effort to support its change in allegation. In any event, Empire was simply following the instructions of Expertrans, indisputably plaintiff's agent, that no value be declared, as indicated on the face of the Expertrans waybill.

◼ We also find unpersuasive plaintiff's argument that the failure of UPS to print its liability limitation on the pick-up receipt in bold-print type voids its terms. First, where the shipper has actual knowledge of the tariff provisions technical deviations from an ICC order will not void its terms. Furthermore, only substantial compliance with such an ICC order is required for a tariff to be effective. *See, e.g., Robinson v. Ralph G. Smith, Inc.,* 735 F.2d 186, 190 (6th Cir.1984). Here, defendant's only failure to comply with the ICC order

consisted of the failure to use a bold-print type on its bill of lading. We find that as a matter of law this was equivalent to substantial compliance with the ICC order.

Accordingly, we find that UPS effectively limited its liability for the loss of these packages to $100 per package. Defendant's motion for partial summary judgment as to this liability limitation is granted. Plaintiff's cross-motion to strike this affirmative defense is denied.

As defendant claims the packages were, in fact, delivered to the final consignees the question of ultimate liability remains unresolved. The other remaining question is whether defendant has satisfied its $100 per package obligation by its alleged payment to Empire as it is not clear from the copy of the cancelled check that it represents payment for these particular claims. The parties are, therefore, referred to United States Magistrate John L. Caden for settlement negotiations and/or supervision of pretrial discovery.

SO ORDERED.